UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

MICHELLE D. IMHAUSEN,          )
                                          )
           Plaintiff,         )
                                          )
      v.                      )   CASE NO. 1:07-cv-0833-DFH-TAB
                                          )
MICHAEL J. ASTRUE,           )
COMMISSIONER OF THE SOCIAL   )
SECURITY ADMINISTRATION,    )
                                          )
          Defendant.      )

ENTRY ON JUDICIAL REVIEW

This is an action for judicial review of the decision of the Commissioner of Social Security to deny plaintiff Michelle D. Imhausen's application for supplemental security income under the Social Security Act. As explained in detail below, substantial evidence supported the determination that Ms. Imhausen was not disabled within the meaning of the Social Security Act, and the Commissioner committed no reversible error of law in making this determination. The court therefore affirms the Commissioner's decision to deny benefits.

*Background*

Ms. Imhausen was born in 1970. She completed the twelfth grade, and has taken some college classes. She has work experience as a bank teller, bartender, and in retail. On December 9, 2003, Ms. Imhausen filed an application for

supplementary security income, alleging that she had been disabled since July 1, 2003.  Ms. Imhausen's medical records revealed that she suffered from significant medical problems.  The most relevant of these medical problems were her anxiety, depression, hypothyroidism, injury to her left arm and hand, and lower back pain.

Several times in 2002 and 2003, Ms. Imhausen's doctor diagnosed her with depression, fatigue, and hypothyroidism.  R. 272, 276, 279, 281, 294-96, 298-99.  In a mental health assessment conducted in December 2003, Ms. Imhausen reported several symptoms of anxiety and depression.  R. 239-40.  Ms. Imhausen's doctor again diagnosed her with anxiety and depression the next day.  R. 241.

In January 2004, Ms. Imhausen underwent a mental status exam in connection with her supplemental security income claim.  Ms. Imhausen reported that she suffered crying spells and had memory and concentration problems.  R. 266-68.  She also reported that she enjoyed singing, bathed and dressed herself, left the house to do laundry several times a week, and cleaned the house once a week.

In February 2004, Ms. Imhausen underwent a psychological examination in connection with her supplemental security income claim.  The examining doctor made several conclusions.   First, the doctor concluded that Ms. Imhausen suffered from mood disorder.  R. 255.  Second, the doctor also concluded that she suffered from post-traumatic stress disorder with partial remission.   R. 257.

-2-

Third, the doctor diagnosed some moderate limitations regarding her memory, concentration, and ability to adapt. R. 248-49. Finally, the doctor diagnosed some mild limitations regarding her activities of daily living, social functioning, and maintaining persistence or pace. R. 262.

The examining doctor also found Ms. Imhausen's claims to be conflicting, as she would claim to be "drained and down," yet would still go out to karaoke bars and sing. R. 264. Additionally, the doctor noted that a third party Activities of Daily Living report suggested that Ms. Imhausen could pay attention for two hours. *Id.* Finally, the doctor noted that Ms. Imhausen had not sought mental health counseling, instead receiving only minimal attention from her primary care physician. *Id.* Later that same month, Ms. Imhausen's personal doctor again diagnosed her with anxiety and depression. R. 238.

In June 2004, Ms. Imhausen was again examined in connection with her supplemental security income claim. The examiner noted that Ms. Imhausen was coherent, lucid, and logical. R. 108. The examiner observed some traits of posttraumatic stress disorder, but did not feel that Ms. Imhausen met the formal criteria for the disorder. The examiner diagnosed major depression as well as anxiety and panic. R. 109. The examiner recommended psychoactive medications and individual psychotherapy.

At her administrative hearing in October 2006, Ms. Imhausen testified regarding her forgetfulness in caring for her children.  R. 428-30.  Ms. Imhausen also testified to her difficulty concentrating on the plot of television shows.  R. 430-31.  Ms. Imhausen also testified that her vision blurred if she focused on the television screen.  R. 431-32.

Ms. Imhausen also described her many symptoms of depression and anxiety.  She testified that she slept excessively, was significantly obese, had no close friends, felt tired all of the time, felt worthless and guilty, and cried several times a day.  R. 433.  Ms. Imhausen also testified that she suffered from panic attacks.  R. 434.  Finally, she testified that she generally did not leave the house by herself due to fear.  R. 439.

As to her left arm and hand, an OrthoIndy doctor first examined Ms. Imhausen in August 2004.  At that time, Ms. Imhausen complained of weakness and numbness in her left elbow and hand.  R. 355.  X-rays of the left wrist and elbow were negative.  The OrthoIndy doctor diagnosed Ms. Imhausen with compression neuropraxia.

Later that same month, Ms. Imhausen underwent an EMG at St. Francis Hospital.  The EMG suggested severe left ulnar neuropathy at the elbow with acute denervation.  R. 357.  At the end of August 2004, Ms. Imhausen returned to OrthoIndy.  She reported worsening pain in her elbow, weakness in her hand,

and tenderness in her fingers.  R. 358.  In September 2004, Ms. Imhausen underwent a left ulnar nerve transposition at OrthoIndy.  R. 359-61.  The surgery did not involve any complications.  R. 361.  At her post-operative follow-up visits, Ms. Imhausen appeared to be doing well, albeit with some numbness and pain. R. 362-63.  During her second post-operative visit, the OrthoIndy doctor noted that full recovery could take up to a year.  R. 363.

In April 2006, Ms. Imhausen's family doctor examined her elbow and hand. At that time, Ms. Imhausen claimed that after several months of initial improvement after the operation, her elbow and hand had gotten progressively worse.  R. 386A.  She complained of soreness and pain in her elbow and numbness and tingling in her ring finger and little finger.  Upon examination, the doctor noted tenderness, numbness, and tingling within the medial forearm.  The doctor diagnosed recurrent left cubital tunnel syndrome and ulnar tunnel syndrome.  R. 386B.  Ms. Imhausen's doctor recommended testing and surgery.

Later that same month, Ms. Imhausen underwent another EMG study.  The study revealed evidence of a left ulnar neuropathy at the elbow with focal slowing and focal conduction block of the left ulnar nerve at the elbow.  R. 386G-H.  The study also revealed ongoing denervation and mild left carpal tunnel syndrome.

In May 2006, Ms. Imhausen underwent left carpal tunnel release, left ulnar tunnel release, and related surgeries.  R. 386I-K.  Ms. Imhausen returned for two

follow-up visits later that same month.  She reported no pain at rest and mild pain with exertion, as well as increasing range of motion.  R 386M-N.  In her June and September 2006 follow-up visits, Ms. Imhausen noted continuing numbness and tingling.  R. 386O-P.

At her hearing, Ms. Imhausen testified that two of her fingers were numb, impairing her ability to grip or pick up items.  R. 439-40.  Ms. Imhausen also testified that she was unable to type because of the numbness.  R. 440.  Finally, Ms. Imhausen stated that she was unable to lift anything with her left arm.  R. 441-42.

As to her lower back pain, Ms. Imhausen's first complaint of back pain within the record occurred in early 2003.  This complaint of upper back pain arose during treatment for shortness of breath in the Community Hospital Emergency Department.  R. 333.  Ms. Imhausen also reported lower back pain in June 2003.  R. 274.  An x-ray of the lumbar spine taken that same day revealed only minimal degenerative changes.  R. 305.

In June 2004, Ms. Imhausen was examined by the Disability Determination Bureau regarding her back pain.  At that time, Ms. Imhausen complained of worsening lower back pain radiating into her legs.  R. 169.  Ms. Imhausen also complained of being unable to walk more than one block, climb more than seven steps, or stand more than five minutes without having to stop and rest.  The

examining doctor noted that Ms. Imhausen's gait was relatively slow but not labored.  R. 170.  Ms. Imhausen had mildly limited range of motion in her lumbosacral spine, could not walk on her heels, had moderate difficulty walking on her toes, and significant difficulty squatting.  *Id.*  The doctor also noted that Ms. Imhausen had no perceived shortness of breath and no difficulty getting out of her chair or moving on and off the examination table.  *Id.*

In August 2004, Ms. Imhausen underwent a Residual Functional Capacity Assessment in connection with her supplemental security income claim.  The examining doctor noted decreased range of motion in the lumbar spine, as well as the minimal degenerative changes in the lumbar spine revealed by the earlier x-ray.  R. 162.  The doctor concluded that Ms. Imhausen could occasionally lift fifty pounds and frequently lift twenty-five pounds.  *Id.*  The doctor also concluded that Ms. Imhausen could stand, sit, and walk for six hours out of an eight hour day.  *Id.*  Finally, the doctor found that Ms. Imhausen was only partially credible with regard to the severity and impact of her symptoms.  R. 166.

At her hearing, Ms. Imhausen testified that she suffered from lower back pain radiating into her legs.  R. 439.  Ms. Imhausen also testified that she was unable to stand for more than five minutes, walk more than half of a block, or sit for more than fifteen or twenty minutes.  R. 441-42.

Ms. Imhausen initially applied for supplemental security income in December 2003.  R. 61-63.  The Social Security Administration denied that application initially and upon reconsideration.  R. 46-49, 35-37.  Upon Ms. Imhausen's request, the Social Security Administration held a hearing.  R. 423-47.  Following the hearing, Administrative Law Judge (ALJ) Albert J. Velasquez denied Ms. Imhausen's application.  R. 10-20.  The Appeals Council declined to review the ALJ's decision.  R. 4-7.  Ms. Imhausen seeks judicial review of the ALJ's denial of disability benefits.

## Standard of Review

The Social Security Act provides for judicial review of the Commissioner's denial of supplemental security income benefits.  42 U.S.C. §§ 405(g) & 1383(c)(3).  The court's function on review of the Commissioner's findings is to determine whether the record as a whole supports the decision.  42 U.S.C. § 405(g).  When the Appeals Council declines review, as it did here, the ALJ's findings are treated as those of the Commissioner.  *Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir. 1994).

The court reviews the Commissioner's (here the ALJ's) factual findings to determine whether they are supported by substantial evidence in the record as a whole.  *Angevine v. Sullivan*, 881 F.2d 519, 521 (7th Cir. 1989).  Substantial evidence is "that quantum of evidence which a reasonable mind might accept as adequate to support a conclusion."  *Id.*, quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  If substantial evidence in the record supports the

Commissioner's findings, the court must affirm the Commissioner's decision unless the Commissioner has made an error of law.  *Wolfe v. Shalala*, 997 F.2d 321, 322 (7th Cir. 1993).  The Commissioner or the Commissioner's designate (the ALJ) has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and determine the case accordingly.  See *Perales*, 402 U.S. at 399-400; *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986).

Although the task before the court is not to decide the facts anew, to reweigh the evidence, or to substitute its judgment for that of the Commissioner, the court will not simply rubber stamp the decision without critically reviewing the evidence as a whole.  *Bauzo v. Bowen*, 803 F.2d 917, 923 (7th Cir. 1986).  In considering the record as a whole, the court must look at all of the relevant evidence, not just the evidence that supports the Commissioner's conclusion. *Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988).  Thus, the court must consider "whatever in the record fairly detracts from [the] weight" of the Commissioner's determination.  *Bauzo*, 803 F.2d at 923.  However, "where conflicting evidence allows reasonable minds to differ," the court must defer to the Commissioner's resolution of that conflict.  *Angevine*, 881 F.2d at 521.

### Discussion

To be eligible for supplemental security income benefits, Ms. Imhausen must establish that she suffered from a disability within the meaning of the Social

Security Act. 42 U.S.C. § 1382(a). (Income and asset eligibility criteria are not disputed here.) She must show that she was unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which could be expected to result in death or which had lasted or could be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). Ms. Imhausen was disabled only if (1) her impairments were so severe that she was unable to perform work that she had previously done and (2) if, based on her age, education, and work experience, she could not engage in any other kind of substantial work existing in the national economy, regardless of whether such work was actually available to her. *Id.*

This is a rigorous standard. A claimant is not necessarily entitled to benefits even if she has substantial impairments. The Act does not contemplate degrees of disability or allow for an award based on partial disability. *Stephens v. Heckler*, 766 F.2d 284, 285 (7th Cir. 1985). Benefits are paid for with tax dollars, including taxes paid by people for whom working is quite painful and difficult. Under the statutory standard, these benefits are available only as a matter of nearly last resort.

To determine whether Ms. Imhausen was disabled under the Social Security Act, the ALJ followed the five-step analysis set forth in 20 C.F.R. § 416.920. The steps are as follows:

> (1)   Is the claimant engaging in substantial gainful activity?  If so, she is not disabled.
>
> (2)   If not, does the claimant have an impairment or combination of impairments that are severe?  If not, she is not disabled.
>
> (3)   If so, does the impairment(s) meet or equal a listed impairment in the appendix to the regulations?  If so, she is disabled.
>
> (4)   If not, can the claimant do her past relevant work?  If so, she is not disabled.
>
> (5)   If not, can the claimant perform other work given her residual functional capacity, age, education, and experience?  If so, then she is not disabled.  If not, she is disabled.

See 20 C.F.R. § 416.920.  The burden of proof is on the claimant for the first four steps and on the Commissioner for the fifth step.  *Young v. Secretary of Health and Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

At step one, the ALJ found that Ms. Imhausen had not engaged in substantial gainful activity since July 1, 2003, the alleged date of disability onset. At step two, the ALJ found that Ms. Imhausen had severe impairments regarding her left ulnar nerve and suffered from thyroid disorder, depression, and anxiety disorder.  At step three, the ALJ found that Ms. Imhausen's impairments, singly or in combination, did not meet or equal the requirements of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  At step four, the ALJ determined that Ms. Imhausen's functional limitations prohibited her from returning to her past relevant work.  At step five, the ALJ determined that Ms.

Imhausen could perform light level work with specific restrictions, so that she was not disabled within the meaning of the Social Security Act.

In her brief, Ms. Imhausen contends that the ALJ committed several errors that require reversal.  In substance, these claimed errors are:

(1)     The ALJ considered Ms. Imhausen less than fully credible solely because objective medical evidence did not substantiate her complaints of pain and other symptoms.

(2)     The ALJ lacked substantial evidence to find at step 3 that Ms. Imhausen did not meet or equal any listed impairment.

(3)     The ALJ relied upon a faulty hypothetical question to find, during step 5, that Ms. Imhausen could work.

(4)     The ALJ failed to summon a medical advisor to determine if Ms. Imhausen's impairments met or equaled any listed impairment.

(5)     The ALJ failed to consider evidence favorable to Ms. Imhausen.[1]

Upon a thorough review of the record, the court finds no reversible error.

I.     *Credibility Determination*

Ms. Imhausen contends that the ALJ's denial of benefits must be reversed because the ALJ found her less than fully credible solely because objective medical evidence failed to substantiate her complaints of pain and other

---

[1]Ms. Imhausen also argues in her reply brief that the ALJ failed to consider relevant evidence in finding her less than fully credible,  Pl. Reply Br. 18, and that the ALJ impermissibly drew a negative inference from her minimal psychiatric care.  *Id.* at 16.  These arguments raised for the first time in reply are deemed waived, see *Ricci v. Arlington Heights*, 116 F.3d 288, 292 (7th Cir. 1997), though the court also finds them to be unpersuasive.

symptoms.  Pl. Br. at 29-31.  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities in the record. *Knight v. Chater*, 55 F.3d 309, 313-15 (7th Cir. 1995).  The ALJ may discount subjective complaints of pain that are inconsistent with the evidence as a whole, but the ALJ may not discount such complaints merely because objective medical evidence does not support the claimed severity of the pain.  *Knight*, 55 F.3d at 314; Social Security Ruling 96-7p, 61 Fed. Reg. at 34484.

At least one medical doctor and one medical consultant who examined Ms. Imhausen found her less than fully credible.  R. 166, 264.  Additionally, Ms. Imhausen has served time for check deception.  R. 266.  Check deception is an offense admissible for impeachment of witness credibility.  Fed. R. Evid. 609(a)(2). The ALJ noted the examining reports and the conviction, among other facts, in making his credibility determination.  R. 18.  Because the ALJ's credibility determination rested on more than just the objective medical evidence's failure to substantiate Ms. Imhausen's complaints of pain and other symptoms, the ALJ did not commit reversible error in making his credibility determination.

II.    *Substantial Evidence*

Ms. Imhausen also contends that the ALJ's denial of benefits must be reversed because the ALJ lacked substantial evidence to find at step three that she did not meet or equal any listed impairment.  In her brief and response, Ms.

Imhausen focuses upon Listing 12.04 for affective disorders and Listing 12.06 for anxiety disorders.[2]

The court must affirm the ALJ's determination of disability or non-disability, so long as substantial evidence supports that determination. *Angevine*, 881 F.2d at 521. In the absence of an unrelated error of law, an ALJ's determination that is supported by substantial evidence is controlling. *Wolfe,* 997 F.2d at 322.

---

[2]The ALJ also considered and rejected Listing 11.14 for impaired motor function and Listing 9.04 for hypoparathyoidism. R. 14. Ms. Imhausen's brief and response do not argue that the ALJ committed reversible error by rejecting those listings.

A.    *Listing 12.04*

A claimant may satisfy step three of the five-step analysis within 20 C.F.R. § 416.920 by showing that the claimant's impairments either meet or equal a listed impairment.

1.    *Meeting the Listing*

Listing 12.04 for affective disorders has three sections: A, B, and C. 20 C.F.R., Pt. 404, Subpt. P., App. 1 § 12.04. A claimant may meet this listing in one of two ways. First, the claimant may satisfy both sections A and B. Alternately, the claimant may satisfy section C.

Section A requires that a claimant suffer depression, mania, or bipolar disorder, as manifested by specific criteria. Section B requires that a claimant suffer specific impairments as a result of the section A disorder. Section C requires that a claimant have a specific history of a chronic affective disorder. The ALJ rejected Ms. Imhausen's claim because he found that she was not impaired as required in section B, rendering the section A analysis of the underlying disorder unnecessary. R. 14.[3]

---

[3]Ms. Imhausen's brief and reply brief focus upon the merits of section B, and do not argue that the ALJ erred by not considering section C. Although Ms. Imhausen presents arguments regarding section A, the ALJ implicitly assumed that Ms. Imhausen had in fact satisfied section A. The court will likewise assume that Ms. Imhausen satisfied section A.

Section B requires that the mood disorder symptoms articulated in section A result in at least two of the following:

(1)    Marked restriction of activities of daily living; or

(2)    Marked difficulties in maintaining social functioning; or

(3)    Marked difficulties in maintaining concentration, persistence, or pace; or

(4)    Repeated episodes of decompensation, each of extended duration.

The ALJ found that Ms. Imhausen failed to meet any of these criteria. Implicitly assuming that all of Ms. Imhausen's mood disorders qualified under section A (allowing their symptoms to be considered under section B), the ALJ found that Ms. Imhausen suffered only "mild limitations" in activities of daily living, "moderate limitations" in maintaining social functioning, "moderate limitations" in concentration, persistence, or pace, and "no episodes" of decompensation. *Id.* Because Ms. Imhausen failed to meet or equal at least two of the section B criteria, the ALJ concluded that she failed to meet the requirements of Listing 12.04 as a whole. R. 19.

Substantial evidence supports the ALJ's conclusions. As to activities of daily living, Ms. Imhausen bathed and dressed daily. R. 266. She also left the house several times a week. *Id.* She also cooked at least occasionally. R. 107. Ms. Imhausen also did laundry and cleaned. R. 266. A medical consultant diagnosed her with only mild limitations in her activities of daily living. R. 262.

-16-

Especially in light of Ms. Imhausen's impaired credibility regarding her subjective complaints, these activities were substantial evidence of only "mild limitations" in activities of daily living, instead of the "marked restrictions" required by section B.

As to maintaining social functioning, Ms. Imhausen sang at karaoke bars. R. 264.  Especially in light of Ms. Imhausen's impaired credibility regarding her subjective complaints, this one example standing alone was substantial evidence that Ms. Imhausen suffered no more than "moderate limitations" in social functioning, instead of the "marked restrictions" required by section B.

Even if singing at karaoke bars were not substantial evidence and Ms. Imhausen had "marked restrictions" regarding her social functioning, she would still meet only one criterion under section B.  By its terms, Ms. Imhausen must meet two criteria under section B to satisfy Listing 12.04 as a whole.  Accordingly, any error by the ALJ regarding the social functioning analysis would be harmless and not warrant remand.

As to maintaining concentration, persistence, or pace, a medical consultant found that Ms. Imhausen could perform simple, unskilled work on a sustained basis.  R. 250.  In making that finding, the medical consultant found that Ms. Imhausen suffered only moderate limitations in carrying out detailed instructions, maintaining attention and concentration for extended periods, and performing at

a consistent pace.  R. 248-49.  The medical consultant noted that Ms. Imhausen suffered no significant limitations regarding carrying out very short and simple instructions, performing activities within a schedule, being punctual within customary tolerances, and sustaining an ordinary routine.  R. 248.  Especially in light of Ms. Imhausen's impaired credibility regarding her subjective complaints, these findings were substantial evidence that Ms. Imhausen suffered no more than "moderate limitations" in maintaining concentration, persistence, or pace, as opposed to the "marked restrictions" required by section B.

Finally, the ALJ found that Ms. Imhausen had not suffered any episodes of decompensation.  R. 14.  Ms. Imhausen has not cited, and the court has not found, any evidence to the contrary.  Substantial evidence supported the ALJ's determination that Ms. Imhausen did not meet any of the section B criteria, let alone two of them.

2.   *Equaling the Listing*

A claimant who does not strictly meet a listing may nonetheless qualify for benefits if her impairments are at least equal in severity to all the criteria for any listed impairment.  20 C.F.R. § 416.926(2) and (3).  Ms. Imhausen claims that her combined depression, anxiety, morbid obesity, chronic low back pain with radiculopathy, and ulnar neuropathy equaled Listing 12.04.  In light of Ms.

Imhausen's arguments, the court limits its review to whether her impairments equaled the section B criteria.

The ALJ explicitly considered Ms. Imhausen's depression, anxiety and ulnar neuropathy together in determining that Ms. Imhausen did not equal section B of Listing 12.04.  R. 15-17.  The ALJ did not explicitly consider Ms. Imhausen's morbid obesity and chronic lower back pain with radiculopathy, although the ALJ relied upon the residual functional capacity assessment prepared by the state agency physicians.  R. 17.  That assessment did consider Ms. Imhausen's obesity and back pain.  R. 162.  Although that assessment determined that Ms. Imhausen could perform medium level work, the ALJ went one step further in considering Ms. Imhausen's total impairments.  R. 17.  Specifically, the ALJ based his conclusions upon Ms. Imhausen being able to perform only limited types of light level work.  R. 17.

The ALJ considered the impairments Ms. Imhausen suffered as a result of her combined depression, anxiety, morbid obesity, chronic low back pain with radiculopathy, and ulnar neuropathy.  Substantial evidence supported the ALJ's determination that Ms. Imhausen's impairments were not at least equal in severity to Listing 12.04.

B.     *Listing 12.06*

Listing 12.06 for anxiety disorders also has three sections: A, B, and C. 20 C.F.R., Pt. 404, Subpt. P., App. 1 § 12.06.  A claimant may meet this listing by satisfying both sections A and B or by satisfying both sections A and C.

Section A requires that a claimant suffer specific manifestations of anxiety or distress.  Section B requires that a claimant suffer specific impairments as a result of the section A disorder.  Section C requires that the disorder completely prevent the claimant from functioning outside of her home.  The ALJ analyzed and rejected Ms. Imhausen's claim on the basis of section B, making an analysis of section A unnecessary.[4]

Section B of Listing 12.06 is identical to section B of Listing 12.04.  The earlier analysis that substantial evidence supports the ALJ's conclusions regarding section B of Listing 12.04 applies with equal force to Listing 12.06.  The ALJ did not commit reversible error in concluding that Ms. Imhausen did not meet or equal Listing 12.06.

---

[4]For the same reasons stated above, the court limits the analysis to section B.

III.    *Hypothetical Question*

Ms. Imhausen also contends that the ALJ relied upon a faulty hypothetical question in step five.  The ALJ requested information from a vocational expert regarding what jobs would be available for an individual with specific limitations.  The limitations that the ALJ imposed on the hypothetical individual included a twenty pound occasional/ten pound frequent lifting limit, a six hour per work day limit on standing and walking, limits on maneuverability, only simple and repetitive work, and only superficial interaction with others.  R. 444.  The vocational expert answered that 24,000 jobs met those requirements in Indiana and that 2,900 of those jobs were at a sedentary exertion level.  R. 444-45.  The vocational expert's answer to the ALJ's hypothetical question led directly to the ALJ's conclusion that Ms. Imhausen was not disabled.  R. 19.

The ALJ's key hypothetical question to the vocational expert must fully set forth the claimant's impairments only to the extent that the ALJ finds them to be supported by the medical evidence in the record.  *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003).  As discussed earlier, the ALJ did not find Ms. Imhausen's subjective allegations to be fully credible.  The hypothetical question took into account the limitations and impairments that the ALJ did find credible and supported on the record.  R. 444.  Substantial evidence supported the ALJ's determination of what impairments and limitations Ms. Imhausen actually suffered.  Because substantial evidence supports the ALJ's determinations, the

ALJ did not commit reversible error in using those determinations to frame his hypothetical question.

IV.    *Need for a Medical Advisor*

Ms. Imhausen also contends that the ALJ erred by failing to summon a medical advisor to determine if her impairments met or equaled any listed impairment.  As primary support for this claim, Ms. Imhausen cites *Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000) (observing that ALJ must not "play doctor" but must summon medical expert if necessary).  *Green* also holds that in making a determination of disability or non-disability, an ALJ must "build a bridge from the evidence to his conclusion."  *Id.*  In so doing, the ALJ must summon a medical expert if need be.  *Id.*

*Green v. Apfel* and is readily distinguishable from this case.  In *Green* the ALJ discredited the claimant's complaints as "disproportionate to the objective medical findings in the record," was concerned by the absence of two potential causes of claimant's pain (disregarding the universe of other possible causes for the pain), and attempted to quantify the claimant's pain control with over-the-counter medications.

The ALJ committed none of these errors during his consideration of Ms. Imhausen's claim, nor were there errors of a similar nature that could be

considered "playing doctor." Additionally, the ALJ gave adequate reasoning for his determinations of medical credibility.

In considering Ms. Imhausen's mental health claims, the ALJ noted that Ms. Imhausen performed household tasks, went to karaoke bars, and had sought only minimal psychiatric treatment. R. 18. All of these facts were based on records from medical providers. The common sense application of these facts to Ms. Imhausen's claim is an adequate bridge and did not require summoning a medical advisor.

With regards to Ms. Imhausen's credibility on her mental health claims, two medical examiners found her less than fully credible. R. 166 and 264. Additionally, Ms. Imhausen had served time for check deception. R. 266. ALJ's notice of these facts to find that Ms. Imhausen's complaints were not fully credible served as an adequate bridge to his conclusions and did not require summoning a medical advisor.

The ALJ did not confront a situation that required the summoning of a medical advisor. He provided an adequate bridge from the evidence to his conclusions and did not commit reversible error in failing to summon a medical doctor.

V. *Favorable Evidence*

Finally, Ms. Imhausen also contends that the ALJ ignored relevant evidence in concluding that she was not disabled.  An ALJ is not required to provide an in-depth analysis of every piece of evidence.  *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995).  The reviewing court will read the ALJ's decision with common sense rather than nitpicking the quality of the draftsmanship.  *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000).  A failure to address and explain the treatment of an entire line of evidence, however, will require a remand unless the failure is harmless.  See *Herron v. Shalala*, 19 F.3d 329, 333-34 (7th Cir. 1994).

There were five major lines of evidence that supported Ms. Imhausen's claim for disability.  These lines of evidence were (1) anxiety, (2) depression, (3) hypothyroidism, (4) numbness, pain, and tingling in her left arm and hand, and (5) lower back pain.  The ALJ addressed and explained his analysis of each of these lines of evidence.

Within his decision, the ALJ noted Ms. Imhausen's testimony regarding depression, anxiety with panic attacks, sleepiness, and post-traumatic stress disorder.  R. 15.  The ALJ also noted her diagnoses of anxiety, depression, post-traumatic stress disorder, and that Ms. Imhausen had reported nervousness with sweating and increased heart rate when around crowds.  R. 15-16.  The ALJ also noted the results of two mental examinations of Ms. Imhausen showing moderate limitations from her depression, anxiety, and related problems.  R. 16.  The ALJ

explained why he did not believe this evidence rose to the level of disability, especially in light of Ms. Imhausen's activities and impaired credibility.  R. 18.

The ALJ similarly laid out the evidence regarding Ms. Imhausen's hypothyroidism.  The ALJ noted that Ms. Imhausen had a history of hypothyroidism, with her thyroid being removed several years earlier. R. 16.  The ALJ noted her complaints of continual sleepiness and excessive sleeping as a result of her hypothyroidism.  R. 17.  The ALJ also noted the conflict between these complaints of continual sleepiness with Ms. Imhausen's other complaints of continual anxiousness and nervousness.  The ALJ finally noted that Ms. Imhausen also attributed her sleepiness to depression, and that no other symptoms of hypothyroidism existed on the record.  For those reasons, the ALJ found that the hypothyroidism was not a disabling impairment.  *Id.*

As to Ms. Imhausen's left arm and hand, the ALJ discussed her orthopedic evaluations, studies, and surgeries in some detail.  R. 16-17.  The ALJ noted that the state agency examiners had found that her residual functional capacity had been impaired by her ulnar nerve injury, leaving her with the ability to do only medium level work.  R. 17.  The ALJ gave Ms. Imhausen an additional "benefit of the doubt" and based his ultimate decisions upon the assumption that she could do only light level work.  *Id.*

Finally, the ALJ discussed Ms. Imhausen's lower back pain.  He noted that she had been seen in June 2004 for her back pain, although her limitations during that examination were moderate and not absolute.  R. 16.  The ALJ noted that the impression from that examination was a history of chronic lower back pain.  *Id.*  The ALJ did not expressly and explicitly respond to this medical record, one that is favorable to a determination that Ms. Imhausen was disabled.

Ms. Imhausen's brief highlights that the doctor in that examination noted that Ms. Imhausen's lower back pain "gets worse with activity as she cannot walk more than one block and cannot climb more than 7 steps and cannot stand more than five minutes at a time before having to stop and rest."  Pl. Br. 23, quoting R. 169.  That quotation, however, comes from the medical record's History section.  *Id.*  A History section is generally based upon subjective complaints.

As explained earlier, the ALJ did not consider Ms. Imhausen's subjective complaints to be fully credible.  R. 18.  Another medical doctor, in August 2004, found that Ms. Imhausen could stand or walk for six hours out of an eight hour day.  R. 162.  In February 2004, a medical consultant found that Ms. Imhausen could perform simple, unskilled work on a sustained basis.  R. 250.  In discussing Ms. Imhausen's back pain in his decision, the ALJ explicitly credited that February 2004 report.  R. 18.  Additionally, the ALJ cited the August 2004 report with approval.  R. 17.

It would have been preferable had the ALJ been more explicit in considering the lower back pain, and specifically stated that the quotation from the June 2004 examination was not credited due to (1) it likely being based upon Ms. Imhausen's subjective complaints, and (2) the existence of contradictory and credited findings from other medical professionals.  However, the ALJ must only "articulate at some minimal level his analysis of the evidence." *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001).

Even assuming that the ALJ did not adequately explain and analyze the lower back pain, the error would be harmless.  Indeed, the ALJ gave Ms. Imhausen the "benefit of the doubt" in considering her  able to only do light level work instead of the medium level work determined in the credited report regarding her back pain.  R. 17.

For each line of evidence, the ALJ considered and discussed adequately the relevant medical evidence and how they influenced his decision.  The ALJ was not required to give a point-by-point analysis of the approximately three hundred pages of medical records compiled in the record.  See *Diaz*, 55 F.3d at 308.

*Conclusion*

The ALJ's decision denying benefits is supported by substantial evidence and does not reflect an error of law requiring reversal and remand. Accordingly, the ALJ's decision is affirmed. Final judgment will be entered accordingly.

So ordered.

Date: March 4, 2008

DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

Copies to:

Patrick H. Mulvany
mulvany@onet.net

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov